NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-2727

_____

UNITED STATES OF AMERICA

v.

KEAON WILSON, a/k/a Keon Wilson,
Appellant

_____

On Appeal from the District Court
of the Virgin Islands
District Court No. 3-17-cr-00026-006
District Judge:  The Honorable Curtis V. Gomez

_____

Submitted Under Third Circuit L.A.R. 34.1 (a)
December 10, 2021

Before: McKEE, RESTREPO, and SMITH *Circuit Judges*

(Filed:  January 25, 2022)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

SMITH, *Circuit Judge*.

Keaon Wilson appeals his conviction for committing and conspiring to commit a Hobbs Act robbery of a jewelry store in St. Thomas, U.S. Virgin Islands, as well as the brandishing of a firearm during that robbery. *See* 18 U.S.C. §§ 1951, 924(c)(1)(A), and 2. We will affirm.[1]

A superseding indictment charged Wilson and six others with the Hobbs Act and firearm offenses. Three of the seven defendants—Wilson, Ron Kuntz, and Shawn McIntosh—went to trial. The jury saw two surveillance videos related to the robbery, the second of which showed the store as it was being robbed. Robert Brown, a cooperating witness, testified to the conspiracy, identified the defendants who appeared in the two surveillance videos, and specifically named Wilson as the man pointing a gun at the store's owner. The jury also heard the testimony of the store's owner, as well as from local law enforcement officers and other witnesses.

At the close of the Government's evidence, Wilson moved for a judgment of acquittal. The Court denied that motion, as well as a renewed motion at the end of the trial. The jury found Wilson, Kuntz, and McIntosh guilty as charged on all three counts. After his sentencing, Wilson appealed.[2]

---

[1] The District Court exercised jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612(a). Appellate jurisdiction exists under 28 U.S.C. § 1291.

[2] The Clerk's Office initially consolidated Wilson's appeal with those filed by Kuntz, No. 18-2695, and McIntosh, No. 18-2696. The appendix in McIntosh's appeal contains the trial record upon which we rely. For that reason, we make reference here to appendices filed by both Wilson and McIntosh. The latter citation will reference Appeal No. 18-2696, followed by the relevant page(s) in that appendix.

I.

Wilson contends that he is entitled to a new trial because of a mix-up during jury selection.[3] This mix-up switched the numbers held by venirepersons 22 and 35, so that venireperson 22 held the number 35, and venireperson 35 held the number 22. As a result, the selection of number 35 as a juror, actually seated venireperson 22. The District Court, becoming aware of the error after the jury found defendants guilty of all charges, conducted a status conference the next day to explain the error. The Court explained that both venirepersons had been subjected to voir dire and neither received peremptory challenges. Appeal No. 18-2696, JA531–33. The Court noted that it did not believe there was any prejudice but allowed for briefing on the issue out of an abundance of caution.

The Government advanced that the verdict should stand as "both jurors were able to be impartial, there was no prejudice as a result of this mix up." *Id.* at JA533. Wilson, Kuntz, and McIntosh each filed a motion for a mistrial. Without ruling on these motions, the Court proceeded to sentencing for all three defendants, implicitly denying the motions for a mistrial. *See United States v. Claxton*, 766 F.3d 280, 290, 301 (3d Cir. 2014) ("[T]reating the District Court's failure to issue an explicit ruling as an implicit denial of his . . . motion.").

Wilson contends that the jury mix-up violated his constitutional rights. The Sixth Amendment guarantees the right to trial "by an impartial jury." U.S. Const. amend. VI. In *Wainwright v. Witt*, the Supreme Court observed that under the Sixth Amendment "the

---

[3] Because this presents a legal question, it is reviewed de novo. *United States v. Tyson*, 947 F.3d 139, 142 (3d Cir. 2020).

quest is for jurors who will conscientiously apply the law and find the facts. That is what an 'impartial' jury consists of." 469 U.S. 412, 423 (1985).

Both *Gray v. Mississippi*, 481 U.S. 648 (1987)*, and *Ross v. Oklahoma*, 487 U.S. 81 (1988), upon which Wilson relies, concerned the Sixth Amendment right to an impartial jury in capital cases. In *Gray*, the trial court improperly excluded a prospective juror for cause. The Court focused on "whether the composition of the *jury panel as a whole* could possibly have been affected by the trial court's erro[neous]" exclusion of the prospective juror. 481 U.S. at 665 (cleaned up). It concluded that the jury had been affected by the trial court's error and that the error was not harmless.

In *Ross*, the Supreme Court expressly limited the "could possibly have been affected" language it used to describe the jury selection error in *Gray*: "We think the broad language used by the *Gray* Court is too sweeping to be applied literally, and is best understood in the context of the facts there involved." 487 U.S. 87–88; *id.* at 87 n.2 ("[T]he statement that any error which affects the composition of the jury must result in reversal defies literal application."). The Supreme Court explained that, unlike *Gray*, the trial court erred in *Ross* by improperly including jurors who should have been excused for cause, prompting the defendant to use his peremptory challenges. While the *Ross* Court acknowledged that the trial court's error may have affected the composition of the jury, the Court rejected the argument that a new trial was required. It focused on the jury that actually deliberated and returned the guilty verdict, noting that none of the twelve jurors who actually sat had been challenged for cause and that the defendant "never suggested that any of the 12 was not impartial." 487 U.S. at 86. Because peremptory challenges "are

4

not of constitutional dimension," but a "means to achieve the end of an impartial jury," the Court declared that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id.* at 88. Consistent with this precedent, the Supreme Court subsequently rejected the notion that use of a peremptory challenge to remove a juror who should have been excused for cause violates the Fifth Amendment right to due process. *United States v. Martinez-Salazar*, 528 U.S. 304, 307, 317 (2000).

Contrary to the arguments pressed here, *Gray, Ross,* and *Martinez-Salazar* are on point, even if this case presents different facts. Those cases are instructive because they establish that the critical inquiry is whether the jury that actually returned guilty verdicts was impartial. Here, during jury selection, counsel neither challenged venirepersons 22 or 35 for cause, nor asked any questions of these venirepersons that elicited responses suggestive of bias or partiality. Nor has Wilson identified anything in the record that would establish that the seating of Juror 35 (actually venireperson 22), resulted in a jury that was not impartial.[4]

---

[4] We have heeded the Supreme Court's instruction, focusing our consideration of whether a challenge to the jury's composition merits relief on the requirement of impartiality. *See United States v. Hodge*, 870 F.3d 184, 202–03 (3d Cir. 2017) (affirming because use of peremptory challenges to remove three prospective jurors, who were not excused for cause, did not result in a partial jury panel); *United States v. Claxton*, 766 F.3d 280, 290, 301 (3d Cir. 2014) (rejecting defendant's assertion that attempted witness tampering and another juror's failure to disclose a previous work relationship with both a government and a defense witness warranted relief where record failed to show any prejudice or bias of the jurors); *United States v. Shiomos*, 864 F.2d 16, 18–19 (3d Cir. 1988) (concluding that the *sua sponte* decision to sequester the jury in light of publicity concerns, which affected the jury composition, did not warrant relief in the absence of some showing of partiality). *See*

Without some basis to conclude that juror 35 was biased or partial, we see no reason to disturb the District Court's judgment.[5]

## II.

Wilson claims the evidence at trial was insufficient to establish he was one of the robbers.[6] That claim is meritless. Cooperating witness Robert Brown identified Wilson as the robber pointing a handgun at the owner of the store.

Wilson also argues that the evidence failed to establish that the robbery had an effect upon interstate commerce as required under 18 U.S.C. § 1951. *See United States v. Walker*, 657 F.3d 160, 178–80 (3d Cir. 2011). Yet the evidence suggested the robbery depleted the jewelry store's inventory, and that it was "[m]ainly from the mainland and Italy." Appeal No. 18-2696, JA144. We conclude, therefore, that the effect on interstate commerce was sufficiently established. *See United States v. Haywood*, 363 F.3d 200, 210–11 (3d Cir. 2004).

## III.

Wilson raises two legal arguments in an effort to set aside his conviction for brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).

---

*also United States v. Mitchell*, 690 F.3d 137, 150 (3d Cir. 2012) ("The law, we hold, does not categorically impute bias to coworkers of key Government witnesses.").

[5] Wilson also argues that what transpired constitutes a structural error. We disagree. Because errors that affect the jury composition do not "always result[] in fundamental unfairness" and the effect of the error can be ascertained by determining if there was an impartial jury, there is no basis for categorizing this as a structural error. *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017).

[6] We review a sufficiency challenge de novo. *United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012).

First, he argues that *conspiracy* to commit a Hobbs Act robbery is not a "crime of violence." Second, he argues that a completed Hobbs Act robbery is not a "crime of violence" because it could be completed without violence to person or property—namely by fear to intangible property. *United States v. Walker* forecloses his second argument. 990 F.3d 316, 325 (3d Cir. 2021) (concluding that a completed Hobbs Act robbery is categorically a crime of violence under the elements clause). And because the Court instructed the jury that the completed Hobbs Act robbery was the predicate crime of violence in this case, we need not address whether a Hobbs Act conspiracy constitutes a crime of violence.[7]

Accordingly, we will affirm.

---

[7] Citing Federal Rule of Criminal Procedure 28, Wilson adopts the opening and reply briefs of Kuntz and McIntosh and the issues raised therein "as his own—to the extent they apply to him." Wilson Br. 3. The expectation that we will "identify the issues to be adopted simply results in the abandonment and waiver of the unspecified issues." *United States v. Fattah*, 914 F.3d 112, 146 n.9 (3d Cir. 2019).