On Return to Remand
On December 2, 1994, we remanded this case to the trial court with instructions that that court take the necessary action to provide us with a supplemental record of a portion of the voir dire proceedings relating to the challenges for cause of venirepersons Danny Ceasar, Wade Morrison, Janice Rivers, William Melvin, Verdell Tigg, and Otho Leanord. Hammond v.State, 665 So.2d 968 (Ala.Cr.App. 1994). We found that because of the absence from the record of the voir dire examination and of the challenges for cause pertaining to those six venirepersons we could not properly review the issues raised by the appellant concerning the challenges nor could we review the record for plain error as we are required to do in death penalty cases. *Page 972 
In response to our instructions on remand, the trial court conducted an evidentiary hearing and, after the hearing, entered its order finding that the missing portion of the record was unavailable and that it could not be provided. The trial court further found that it was impossible to provide a reconstructed record or an agreed statement of facts as to the missing portion of the transcript. In its order, the trial court stated, "Clearly, under this set of circumstances, the defendant will be unable to present his claims of error with respect to the issues arising in the missing portion of the transcript." The evidence presented at the evidentiary hearing supports the findings of the trial court.
In reviewing this issue, we must determine whether a substantial right of the appellant has been adversely affected by this omission from the transcript. Ex parte Godbolt,546 So.2d 991 (Ala. 1987). Without the benefit of either the transcription of the voir dire proceedings or an agreed statement of facts, we have no way of assessing whether five of the named venirepersons were properly excluded for cause. (As we stated in our previous opinion, Otho Leanord was not excused for cause at the separate voir dire hearing involving the six venirepersons, but was subsequently excluded because of his strong convictions against the death penalty.)
The general questions propounded by the trial court to the venire as a whole and the responses of the six venirepersons in this general examination are helpful in trying to understand what probably transpired in the separate voir dire proceedings. The trial court asked, "Do any of you feel that you cannot sit in judgment on another person for any reason, including religious or moral convictions?" Janice Rivers responded in the affirmative. The court asked, "Do any of you have a lawful excuse for not serving on the jury this week for any reason?" Otho Leanord responded in the affirmative. The court asked if anyone would have a problem serving on a sequestered jury. Verdell Tigg, Danny Ceasar, and William Melvin responded in the affirmative. The court asked if anyone had talked with anyone about the case or had read anything about the case. Wade Morrison, Melvin, Rivers, Tigg, and Leanord responded in the affirmative. The court asked, "Do any of you know of any reasons why you couldn't be fair and impartial jurors in this case and give both the state and the defendant a fair trial?" Ceasar responded affirmatively.
Thereafter, the six venirepersons were questioned separately in the trial judge's chambers, and five of them were excluded for cause at that time. As to the reasons for their exclusion, we can only speculate. However, we do know that two of them — Rivers and Ceasar — were excluded for cause on motion of the state. Considering the responses of Rivers and Ceasar to the general questions propounded by the trial court, i.e., whether they had any reason to believe that they could not give the parties a fair trial or whether they had any religious or moral convictions that could prevent them from sitting in judgment of the appellant, we believe that it is probable that Rivers was questioned about her beliefs concerning the death penalty, and it is highly likely that Ceasar was likewise questioned. Further support for our position is found in the questions propounded to Leanord later in the proceedings, when the prosecutor asked, "But didn't you tell us back then [obviously referring to the separate voir dire proceedings involving the six venirepersons] that you could still render a fair verdict and still listen to the law, to the facts of the case regardless of whether or not that that might [result in] the imposition of the death penalty in a particular case?" The record indicates that it is highly likely that at least some of the six venirepersons were questioned in the separate proceeding about their beliefs concerning the death penalty, and it is possible that Rivers and Ceasar, as well as Tigg, Morrison, and Melvin, were excluded because of their beliefs concerning the death penalty. However, we will never know because we do not have a record of that proceeding and therefore cannot review the rulings of the trial court.
The exclusion for cause of a juror who is not irrevocably committed to vote against the death penalty regardless of the facts and circumstances is, in a capital prosecution, reversible constitutional error and cannot be subjected to harmless error review. Ross v. *Page 973 Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988);Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045,95 L.Ed.2d 622 (1987). See also Hunter v. State, 585 So.2d 220
(Ala.Cr.App. 1991).
After a careful review of the record before us, we conclude that the missing portion of the voir dire examination and the proceeding relating to challenges for cause constitutes a substantial and significant portion of the record, and that the missing portions of the record adversely affect a substantial right of the appellant. The state's failure to afford the appellant a record sufficiently complete to permit review of the issue of the exclusion of the venirepersons for cause constitutes reversible error.
The appellant raises 25 additional issues on appeal; however, we will address only three of those, which are issues we believe would arise again in further proceedings. The issues that we will address are: (1) whether the appellant's conviction and death sentence are based on a void indictment; (2) whether the appellant's trial for the capital offense violated his constitutional right to be free from double jeopardy because the indictment had previously been dismissed by the trial court "with prejudice"; and (3) whether the state's prosecution was vindictive. These issues arise as a result of the appellant's first conviction after the setting aside of a plea bargain agreement by the trial court at the instance of the appellant. The trial court held that the entire proceeding was void because it did not have jurisdiction to find the appellant guilty and to sentence him pursuant to the agreement.
It appears from the record that the appellant and his girlfriend, Sandra Jackson, were indicted for offenses arising out of the murder and robbery of James McNeal. The appellant was indicted for the capital offense of murder committed during the course of a robbery, while Jackson was separately indicted for murder and robbery. The appellant entered into a plea agreement with the state whereby he agreed to plead guilty to the offense of "solicitation to commit unlawful distribution of a controlled substance" and to be sentenced to 18 years' imprisonment as a habitual offender with three prior felony convictions, and to pay a fine of $5,000. It is obvious that when the plea agreement was negotiated the state was concerned about having sufficient evidence to convict the appellant of the capital offense. The appellant's denial of any involvement in the capital offense, the unavailability of the testimony of the alleged accomplice, and the obvious lack of evidence motivated the state to negotiate a plea agreement. As part of the plea agreement, the appellant agreed to deny in open court any involvement in the crime, and further agreed that if he was called as a witness in the trial of Jackson, he would not testify that it was he and he alone who killed and/or robbed the victim. The state agreed that once the appellant fulfilled his part of the agreement, the state would move that the capital charge be dismissed "with prejudice" and would not pursue "any further prosecution on the basis of those facts."
On February 16, 1989, the trial court accepted the plea agreement, and upon the appellant's pleading guilty, sentenced him in accordance with the agreement. Upon conclusion of the guilty plea proceedings, the trial court stated, "And, you understand further that . . . at the end of [Jackson's] trial, if you abide by the terms of your agreement, that the charge of capital murder will be dismissed with prejudice?" The appellant answered, "Yes."
Subsequently, Jackson was tried for murder and robbery. The trial resulted in a mistrial when the jury was unable to reach a verdict. Thereafter, on July 10, 1989, Jackson and the state entered into a plea agreement whereby she agreed to plead guilty to a charge of buying and receiving stolen property and to receive a sentence of 15 years' imprisonment, which sentence would run concurrently with other unrelated sentences she was then serving; in return the state agreed to move for the dismissal of the murder and robbery charges. The trial court accepted the guilty plea and sentenced Jackson in accordance with the agreement on July 10, 1989. The record does not affirmatively indicate that the prosecutor ever moved to dismiss the appellant's capital indictment or that it was in fact ever dismissed. *Page 974 
On August 4, 1989, the appellant petitioned for a writ of habeas corpus seeking to vacate his conviction and his 18-year sentence, contending that the trial court lacked jurisdiction to accept his guilty plea and to sentence him, because, he said, the crime to which he had pleaded was not a lesser included offense of the capital crime of murder-robbery for which he had been indicted and, therefore, he argued, the entire proceedings were void.[1] On February 20, 1990, the trial court agreed, granted the petition, set aside the conviction, and restored the capital charge to the docket.
The original capital murder-robbery indictment in this case was a valid indictment. In carrying out the plea agreement, the state attempted to amend the indictment by adding a separate count charging "solicitation to distribute a controlled substance," Ala. Code 1975, § 13A-12-202. The amendment purporting to add this charge was void. An indictment may be amended by order of the court with the consent of the defendant in all cases, except to change the offense or to charge new offenses not contemplated by the original indictment. Ross v.State, 529 So.2d 1074 (Ala.Cr.App. 1988); Ala.R.Cr.P. 13.5. In this case, the added charge is a substantial change from the indictment returned by the grand jury and charges a new offense not included in the original charge. Thus, all proceedings stemming from the amendment of the indictment had no legal effect and were void.
When the appellant challenged the proceedings in his post-conviction petitions, the trial court had no choice but to set aside his conviction and sentence.[2] The appellant argues that once the proceedings stemming from the amendment were determined to be void, the original capital charge should not have been restored to the docket because, he argues, the indictment, as amended, was void and a re-indictment by the grand jury was necessary before the state could proceed under the capital charge. He relies on Ex parte Wesley,481 So.2d 1162 (Ala. 1985). However, we agree with the state that there was no amendment to the original indictment, only an unsuccessful attempt to amend the indictment by adding a count that was a nullity. Under these facts, when the guilty plea proceedings and the judgment based thereon were recognized as void and were set aside, it was proper for the trial court to order the original capital charge to be restored to the docket for trial. Williams v. State, 494 So.2d 819 (Ala.Cr.App. 1986). Even if a charge has been nolle prossed, which is not the case here, further proceedings on that charge at a later time are not barred, and a person is not placed in double jeopardy when the state seeks to prosecute him on a previously dismissed charge, after his guilty plea to another charge has been vacated. Williams v. State, and cases cited therein. We think that Ex parte Wesley, upon which the appellant relies, is factually distinguishable from this case. For these reasons, we find no merit in the appellant's contentions that he was convicted of the capital offense on a void indictment or that he was placed in double jeopardy. The capital indictment was valid, and his trial under that indictment, under the facts of this case, was proper.
We find no evidence to support the appellant's contention that the state's prosecution of him was vindictive. The appellant himself initiated the proceedings to set aside his conviction and sentence imposed pursuant to the guilty plea. The trial court was compelled to set aside the void judgment when it was brought to its attention. There is no appearance here of vindictiveness or retaliation. When the judgment was set aside, the appellant was placed in the same position he was before he accepted the plea bargain.
Because the state failed to provide the appellant a sufficient record on appeal, as *Page 975 
discussed above, we reverse the judgment and remand this case.
REVERSED AND REMANDED.
TAYLOR, P.J., McMILLAN and LONG, JJ., concur.
COBB, J., concurs in result only.
[1] On February 1, 1980, the appellant filed a post-conviction petition pursuant to Ala.R.Cr.P.Temp. 20, raising the same issue.
[2] The appellant attempted unsuccessfully to withdraw his post-conviction petitions. He also claimed that the habeas corpus petition was filed by another inmate without his authorization and that his name was forged on the petition. The trial court found that the appellant was aware that the petitions were being filed and that they were in fact his petitions. The record supports these findings.