PER CURIAM.
The petitioner, Jerry Hammond, filed this petition for a writ of mandamus requesting that we direct Judge Jerry White to grant Hammond’s motion filed pursuant to § 15-18-200, Ala.Code 1975, for post-conviction DNA testing.
In 1990, Hammond was convicted of capital murder and was sentenced to death. We reversed his conviction and sentence because the record of the lower court proceedings was incomplete. See Hammond v. State, 665 So.2d 970 (Ala.Crim.App.1995). In 1996, Hammond was tried a second time for capital murder and was convicted and sentenced to death. We reversed his conviction after finding reversible error in the prosecutor’s reference to the result of Hammond’s first trial. See Hammond v. State, 776 So.2d 884 (Ala.Crim.App.1998). In 2002, Hammond was tried a third time and was convicted of capital murder and sentenced to life imprisonment without the possibility of parole. We affirmed his conviction and sentence in an unpublished memorandum. Hammond v. State (No. CR-03-0408, August 13, 2004), 920 So.2d 609 (Ala.Crim.App.2004) (table).
In July 2010, Hammond filed a motion in the Houston Circuit Court seeking post-conviction DNA testing. After holding a hearing, Judge White issued an order on March 16, 2011, denying the motion. Hammond appealed. Citing Searcy v. State, 77 So.3d 174 (Ala.Crim.App.2011), we dismissed the appeal as nonappealable. Hammond v. State (CR-10-1225, July 11, 2011).
Hammond then filed this petition for a writ of mandamus requesting that we direct Judge White to set aside his order denying Hammond’s motion for DNA testing. Because we held in Searcy that the denial of a motion for postconviction DNA testing is not appealable, this is Hammond’s only means of obtaining review. We directed the respondents to answer the allegations contained in the mandamus petition.
In our 1998 opinion reversing Hammond’s second conviction for capital murder, we set out the following facts surrounding the robbery/murder:
“On August 3, 1988, Jerry Hammond and Sandra Jackson went to Hammond’s house in Dothan, where they smoked crack cocaine. During the late evening hours, they smoked crack cocaine on four occasions. Between those occa *174 sions they drove back and forth from Hammond’s house to Martin Homes housing project, where they would purchase more crack cocaine. According to Jackson, they would smoke the crack cocaine at Hammond’s house, and after the effects of the drug wore off after 10 to 20 minutes, they would go purchase some more crack cocaine. After the fourth purchase, the two had run out of money and, according to Jackson, Hammond told her he could get some money ‘from a lady that he knew.’ Sometime after midnight, the two left Hammond’s house in a distinctive blue Volkswagen automobile with ‘mag wheels’ and a ‘T-top’ roof. They drove to the Dothan neighborhood where Hammond’s 80-year-old uncle James McNeil lived. According to Jackson, Hammond got out of the car carrying a yellow towel and a knife. He told her, ‘I’m not going to Cousin McNeil’s house.’ She stayed in the car, and watched Hammond walk down the street into the dark. Jackson testified that, as she sat in the car, she heard a door ‘pushing, as if something was hindering it from opening.’ She said she also heard loud groaning, and the sound of glass breaking. When Hammond returned to the car, he did not have the towel, but he was still carrying the knife. He was also carrying a pair of blue pants that had what appeared to Jackson to be wet blood on them. According to Jackson, Hammond told her to ‘shut up’ when she asked what he had done. As he drove, Hammond removed his shirt and threw it out the window. He went through the blue pants and retrieved a wallet from which he removed money. The wallet and pants were also thrown out the car window. Hammond and Jackson parked the car on a dirt road and left, going in different directions.”
776 So.2d at 885-86. An eyewitness, a neighbor of the victim’s, identified Hammond as the individual he saw leaving the scene of the murder.
First, the State asserts that this petition for a writ of mandamus is untimely because it was filed well past the presumptively reasonable period for filing a petition for a writ of mandamus. See Rule 21(a), Ala. R.App. P. The presumptively reasonable period is 42 days from the date of the ruling that is the subject of the petition. Judge White denied Hammond’s motion on March 16, 2011, and this petition was not filed until August 19, 2011 — well past the presumptively reasonable time period. Hammond’s petition is untimely.
Moreover, to establish the prerequisites for the issuance of a writ of mandamus, the petitioner must show: (1) a clear legal right to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no other adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court. See Ex parte Jones, 61 So.3d 1104 (Ala.Crim.App.2010).
Section 15-18-200, Ala.Code 1975, provides, in pertinent part:
“(e) A motion for DNA testing shall contain all of the following items:
“(1) A clear and specific statement of how the requested forensic DNA testing would prove the factual innocence of the petitioner of the offense for which the petitioner was convicted, under penalty of perjury.
“(2) A statement of the specific evidence that was secured in relation to the investigation or prosecution that resulted in the conviction of the petitioner to be tested, which shall include a statement that:
“a. The evidence, which potentially contains DNA, was obtained in rela *175 tion to the crime and subsequent indictment, which resulted in the petitioner’s conviction.
“b. The evidence was not subjected to DNA testing because the existence of the evidence was unknown to the petitioner or to the petitioner’s trial attorney prior to trial or because the technology for the testing was not available at the time of trial.
“c. A description of the evidence to be tested and, if known, its present location, its origin and the date, time, and means of its original collection.
“d. The results of any DNA or other biological evidence testing that was conducted in relation to the investigation or prosecution that resulted in the conviction of the petitioner and entered as evidence at trial by either the prosecution or the defense, if known.
“e. If known, the names, addresses, and telephone numbers of all persons or entities who are known or believed to have possession of any evidence described by paragraph a. or b., and any persons or entities who have provided any of the information contained in the petitioner’s motion, indicating which person or entity has which items of evidence or information.
“f. The names, addresses, and telephone numbers of all persons or entities who may potentially testify for the petitioner and a description of the subject matter and summary of the facts to which each person or entity may testify in the event the circuit court determines an evidentiary hearing would be appropriate.
“(3) Prima facie evidence demonstrating that the identity of the perpetrator was at issue in the trial that resulted in the conviction of the petitioner and that DNA testing of the specified evidence would, assuming exculpatory results, demonstrate the factual innocence of the applicant of the offense for which the petitioner was convicted.
“(f)(1) Except as provided in subdivision (2), the circuit court shall order the testing requested in a motion for DNA testing, under reasonable conditions designed to protect the interest of the state and the integrity of the evidence and testing process, upon a determination, after review of the record of the trial of the applicant, of all of the following:
“a. That the requirements of subsection (c) have been met.
“b. That the evidence to be tested is in the possession of the state or the court and has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect.
“c. That the motion is made in a timely manner pursuant to the Alabama Rules of Criminal Procedure Rule 32.2(c), or within 12 months of August 1, 2009.
“d. That the motion is for the purpose of demonstrating the actual innocence of the applicant and not to delay the execution of sentence or administration of justice.
“(2) The court may not order the testing requested in a motion for DNA testing if, after review of the petition, the state’s response, if required, and the record of the trial of the applicant, the court determines that there is no reasonable possibility that the testing will produce exculpatory evidence that would exonerate the applicant of the offense for which the applicant was convicted.”
In his motion, Hammond requested that DNA testing be conducted on the *176 victim’s pants, the victim’s wallet, the fingerprints taken from the refrigerator that was lying on top of the victim when he was found, the yellow towel, the shirt found with the victim’s wallet, Hammond’s shoes and shoelaces, and swabs and tape lifts taken from the blue Volkswagen. Hammond asserted that his conviction rested on the testimony of Sandra Jackson and that the testing will show that Jackson touched the identified items. When denying the motion, Judge White, stated:
“The defendant, Hammond, filed his petition under Section 15-18-200, Code of Alabama 1975 requesting postconviction DNA testing. The petition was set for oral hearing as requested by defendant, and the defendant was present with his attorney at said hearing.
“The defendant’s attorney enumerated five items at the hearing which were admitted into evidence during the trial resulting in defendant’s conviction which he wishes subjected to DNA testing. Those items are a pair of white tennis shoes which contain two blood spots, a Volkswagen gear shift which supposedly has blood on it, the victim’s trousers which supposedly have blood on them and which the defendant conjectures may have been touched by the perpetrator, the victim’s wallet which the defendant conjectures may have been touched by the perpetrator, and the defendant’s gray shirt which supposedly has blood on it. All of the items on which blood was found were known to the defendant long prior to his trial in 2002 and no effort was made by him to have DNA testing done on that blood evidence then. Technology for testing blood DNA was available free of charge to the defendant through the Alabama Department of Forensic Sciences prior to the 2002 trial. As a matter of fact, DNA testing was repeatedly discussed by the attorneys for both the state and the defendant during the course of the trial, but for whatever reason defendant and his attorneys chose not to have any DNA testing done. All three of defendant’s trial attorneys were competent attorneys experienced in the defense of capital cases- before juries. The court believes that pursuant to § 15-18-200(e) [ (2)b.] defendant cannot now resort to postconviction DNA testing in an attempt to gain a retrial of his case when that testing was available prior to trial.
“The defendant in this petition, in the trial resulting in his conviction, and in argument before the Court at the oral hearing, contends that Sandra Jackson was the actual perpetrator of this offense. He asserts that, with the modern technology known as ‘Touch DNA’ if the victim’s pants, the victim’s wallet, and defendant’s gray shirt were subjected to ‘Touch DNA’ testing such a test might reveal that the perpetrator touched those items. The eyewitness evidence reflects that both the defendant and Sandra Jackson repeatedly handled both the trousers and the wallet after the victim was killed. A strong likelihood also exists that Sandra Jackson touched the gray shirt as she and defendant were, per the eyewitness evidence, together several hours prior to and after the murder. An analysis by ‘touch DNA’ to once again tell us that Sandra Jackson touched the pants, the wallet and the gray shirt would not reveal anything that was not already known to the trial jury.
“Defendant, at the hearing, also expressed a desire to have a fingerprint from the refrigerator, some pieces of shattered windowpane, and scrapings from the victim’s fingernails tested. The Court has no idea, because the evidence at the hearing did not reflect, whether or not those items exist and, if *177 so, where they are located and whether or not they have been preserved in a manner which would make results reliable.
“This court has carefully weighed and considered the motion filed by defendant, the State’s response, particularly the record of the trial of defendant from 2002, the court’s own memory and recollection of the 2002 trial, as well as arguments of defense counsel and the District Attorney at the recent hearing. Based upon all of the above and foregoing, it is the judgment and opinion of the Court that there is no reasonable possibility that the testing requested by defendant will produce exculpatory evidence that would exonerate the defendant. The testing requested by defendant is therefore denied.”
Hammond bears the burden of establishing by a reasonable probability that he is entitled to postconviction DNA testing. See § 15 — IS—200(f)(2), Ala.Code 1975. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show that the “evidence was not subjected to DNA testing because the existence of the evidence was unknown to the petitioner or to the petitioner’s trial attorney prior to trial or because the technology for the testing was not available at the time of trial.” See § 15-18-200(e)(2)b., Ala.Code 1975. The petitioner must also show that the testing will establish his “factual innocence.” See § 15-18-200(e)(3), Ala.Code 1975.
We agree with the circuit court that Hammond failed to show that he was entitled to postconviction DNA testing. DNA testing of the items would not show Hammond’s innocence; at most, it would show that another individual, who Hammond contends is Jackson, may have touched the items. Compare State v. El-Tabech, 259 Neb. 509, 530, 610 N.W.2d 737, 751 (2000) (“Even proof that someone else’s DNA might appear on some unspecified physical item at the crime scene does not exclude El-Tabech as the perpetrator of the crime.”). The circuit court did not abuse its discretion in denying Hammond’s motion for postconviction DNA testing. Accordingly, Hammond cannot show a clear right to the relief sought. Thus, this petition for a writ of mandamus is denied.
PETITION DENIED.
WINDOM, P.J., and WELCH, KELLUM, BURKE, and JOINER, JJ., concur.