ACCEPTED
03-14-00722-CR
6407261
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/7/2015 2:32:51 PM
JEFFREY D. KYLE
CLERK

No. 03-14-722-CR; 03-14-723-CR; 03-14-724-CR

IN THE
COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
OF TEXAS, AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

8/10/2015 9:51:51 AM

JEFFREY D. KYLE
Clerk

**MARK FRUGE**
Appellant

v.

**The State of Texas**
Appellee

On Appeal In Case Number D1DC-13-200256; 13-200259; 13-200257
From the 331ST District Court of Travis County
The Hon. David Crain, Judge Presiding

# Brief on Appeal

Submitted by:

The Law Offices of Ariel Payan
1012 Rio Grande
Austin, Texas  78701
Tel.  512/478-3900
Fax:  512/472-4102
arielpayan@hotmail.com

**Ariel Payan**
State Bar No. 00794430

Court-Appointed Attorney for Appellant

**Oral Argument Not Requested**

# Table of Contents

Certificate of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Point of Error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Facts Relevant to Appeal.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Point of Error Restated.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Delivery.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Certificate of Parties

Pursuant to Rule 38.1(a), Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel, so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

### Appellant

Mark Fruge
TDCJ-ID No.1302065
Ellis Unit
1697 FM 980
Huntsville, TX 77343

Appellate Counsel:                              Trial Counsel:

Ariel Payan                                          Albert Duke Hildreth
1012 Rio Grande                               Margaret Chen-Kercher
Austin, Texas  78701                        1301 Nueces St., Austin

### State of Texas

Rosemary Lehmberg
P.O. Box 1748
Austin, TX 78767

Appellate Counsel:                              Trial Counsel:

Scott Taliaferro                                   Matthew Foye
                                                          David Levingston

# Index of Authorities

**Federal Cases**:

Gray v. Mississippi, 481 U.S. 648 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Uttecht v. Washington, 551 U.S. 1 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Victor v. Nebraska, 511 U.S. 1, 5 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Wainwright v. Witt, 469 U.S. 412, 521 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


**Texas Cases**:

Delk v. State, 855 S.W.2d 700, 704 (Tex.Cr.App. 1993). . . . . . . . . . . . . . . . . . . . 15

Feldman v. State, 71 S.W.3d 738, 744 (Tex.Cr.App. 2002). . . . . . . . . . . . . . . . . 6, 10

Garrett v. State, 851 S.W.2d 853, 859 (Tex.Cr.App. 1993). . . . . . . . . . . . . . . . . . 10

Geesa v. State, 820 S.W.2d 154, 162 (Tex.Cr.App. 1991). . . . . . . . . . . . . . . . . . . 10

Jackson v. State, 992 S.W.2d 469 (Tex.Cr.App. 1999). . . . . . . . . . . . . . . . . . . . . 15

King v. State, 29 S.W.3d 556, 568 (Tex.Cr.App. 2000). . . . . . . . . . . . . . . . . . . . . . 7

Ladd v. State, 3 S.W.3d 547, 562 (Tex.Cr.App. 1999), cert. denied, 529 U.S. 1070 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Montgomery v. State, 810 S.W.2d 372, 387 (Tex.Cr.App. 1990) (on rehearing). . . . . . 14

Murphy v. State, 112 S.W.3d 592, 597 (Tex.Cr.App. 2003). . . . . . . . . . . . . . . . . . 10

Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). . . . . . . . . . . . . . . . . . . 10

Pondexter v. State, 942 S.W.2d 577, 584 (Tex.Cr.App. 1996). . . . . . . . . . . . . . . . . 16

Rankin v. State, 953 S.W.2d 707, 741 (Tex.Cr.App. 1996). . . . . . . . . . . . . . . . . . . . . . 14

Rogers v. State, 853 S.W.2d 29, 33 (Tex.Cr.App. 1993). . . . . . . . . . . . . . . . . . . . . . . . 16

Stafford v. State, 813 S.W.2d 503, 506 (Tex.Cr.App. 1991). . . . . . . . . . . . . . . . . . . . . 14

Theus v. State, 845 S.W.2d 874, 881 (Tex.Cr.App. 1992). . . . . . . . . . . . . . . . . . . . . . . 15

Wyatt v. State, 23 S.W.3d 18, 25 (Tex.Cr.App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Cases from Other Jurisdictions**:

**Federal Constitution**:

United States Constitution, Sixth, and Fourteenth Amendments. . . . . . . . . . . . . . . . . . 6

**Texas Statutes / Codes**:

Tex.R.Crim.Evid. 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex.Code Crim. Proc. Ann. art. 35.16(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex.R.Crim.Evid. 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex.R.Evid. 404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Preliminary Statement

Pursuant to Tex.R.App.Pro. 38.1(d), the following is a brief general statement of the nature of the cause or offense:

Appellant, Mark Fruge, was charged by indictment with the offense of aggravated assault with a deadly weapon, a felony, in Cause No. 13-200256; Aggravated Robbery in 13-200259; Attempted Capital Murder, and aggravated assault of a public servant in 13-200257 in the 331th District Court of Travis County, Texas. He was convicted in said cause and was sentenced to life incarceration. Notice of Appeal was timely given.

## Point of Error

Pursuant to Tex.R.App.Pro. 38.1(f), the following are the points upon this appeal is predicated:

**THE TRIAL JUDGE ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE, DENYING APPELLANT A FAIR AND IMPARTIAL JURY.**

**THE TRIAL COURT ERRED IN ALLOWING THE STATE TO IMPEACH A WITNESS WITH APPELLANT'S PRIOR CONVICTION AND/OR BAD ACT**

No. 03-14-722-CR; 03-14-723-CR; 03-14-724-CR

IN THE
COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
OF TEXAS, AT AUSTIN

**MARK FRUGE**
Appellant

v.

**The State of Texas**
Appellee

On Appeal In Case Number D1DC-13-200256; 13-200259; 13-200257
From the 331ST District Court of Travis County
The Hon. David Crain, Judge Presiding

# Brief on Appeal

TO THE HONORABLE JUDGES OF THE THIRD COURT OF APPEALS:

COMES NOW, MARK FRUGE, Appellant in the above styled and numbered cause, by and through Ariel Payan, his undersigned attorney of record, and respectfully files this "Brief on Appeal," filed pursuant to Tex.R.App.Pro. 38.1, and would pursuant to 38.1(g) show the Court as follows:

**Facts Relevant to Appeal**

On January 14, 2013 Abraham Martinez was working for the armored car service Guarda. (R.R. Vol. 6, pg. 269). He had arrived at the Capital Plaza Fallas Discount Store

in Austin, on his route to pick up cash deposits. (R.R. Vol. 6, pg. 271). As he was leaving the store with the deposits he ran into a man standing near the exit holding a gun. The suspect demanded the bag and Martinez' weapon. The suspect took the weapon and bag and then said "so you know this is serious", fired two to three rounds into the area around the cash register. Id. Two women at the register yelled at the suspect. (R.R. Vol. 6, pg. 273). The suspect ran out of the store and Martinez called 911. At trial Martinez could not identify anyone. (R.R. Vol. 6, pg. 279).

Ann Marie Lozano was working at the Fallas Discount store on that date and was standing near the cash registers during the robbery. (R.R. Vol. 7, pg. 17). The suspect was three to four feet away when he fired into the cash registers, Lozano had thought she was hit at the time. (R.R. Vol. 7, pg. 19). Lozano testified that the suspect was in the store for less than ten seconds, and the three rounds fired hit the register drawer, the computer, and the post by the register. (R.R. Vol. 7, pg. 22). Lozano identified Appellant as the suspect. (R.R. Vol. 7, pg. 21). Theresa Shanklin was also working the cash registers that day. Shanklin testified that after the suspect ran out of the store, she followed him trying to get the armored car driver's attention. (R.R. Vol. 7, pg. 44). She also identified Appellant as the suspect. (R.R. Vol. 7, pg. 45). Shanklin testifed that the suspect did not point the weapon at the cashiers, he pointed it at the cash register and wall. (R.R. Vol. 7, pg. 48).

Officer Roosevelt Granderson, with APD, was on patrol nearby when he heard the call go out that a robbery was in progress at Capital Plaza. (R.R. Vol. 7, pg. 79).

2

Granderson received a description of the suspect and his vehicle and began pursuit. He spotted the vehicle on the 183 service road, in traffic. (R.R. Vol. 7, pg. 85). Granderson had his lights and siren on, and the vehicles in front of him were moving out of his path, except for one, which was weaving in and out of traffic. Id. The suspect stopped, got out of his vehicle and started firing at Granderson and Officer Pippen who had been following the pursuit. (R.R. Vol. 7, pg. 89). The suspect ran out into a nearby wooded area and Granderson and Pippen gave chase, which was when Granderson realized that he had been shot in the knee. (R.R. Vol. 7, pg. 90). A search of the vehicle produced a pistol and a spare magazine which had a label on it with Appellant's name and an address off 290. (R.R. Vol. 7, pg. 124).

Richard Harris was the assistant manager with Dollar General on Manor road on that date. (R.R. Vol. 8, pg. 145). He was walking to his car when he saw a man approach him with a pistol, who told him to get in the car and drive. (R.R. Vol. 8, pg. 146). The suspect told Harris that he was not going to hurt him, he had done something he should not have, and just needed to get out of the area. (R.R. Vol. 8, pg. 146-7). Harris drove down Manor and pulled into a side street where the suspect got out and Harris called the police. (R.R. Vol. 8, pg. 147-8).

Appellant was arrested in the Rosemont Apartments soon thereafter. APD, spotted him by a description given by Harris and other witnesses. When he was arrested, a Glock hand gun was found as well as U.S. currency wrapped up in plastic. (R.R. Vol. 8, pg. 175).

Appellant was convicted of aggravated assault with a deadly weapon, aggravated assault against a public servant, and aggravated robbery, the jury found him not guilty of attempted capital murder. Appellant was sentenced to life in prison in all three cases. This appeal follows.

## Summary of the Argument

Pursuant to Tex.R.App.Pro. 38.1(h), the following is a brief summary of the argument presented in this appeal:

The trial court erred in granting the State's challenge to a veniremember who could follow the law, but required a higher threshold to be presented for the State to reach its burden of proof.

The trial court erred in allowing the admission of an extraneous offense over objection. The State introduced evidence of a car jacking that was committed after all the evidence on the charged offenses was presented but before Appellant was captured. Evidence presented of the car jacking was not relevant to any issue in controversy at trial.

4

**THE TRIAL JUDGE ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE, DENYING APPELLANT A FAIR AND IMPARTIAL JURY.**

Article 35.16 of the Texas Code of Criminal Procedure provides that a challenge for cause may be made by the State if a potential juror has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment. Tex.Code Crim. Proc. Ann. art. 35.16(b)(3). To show error in the trial court's grant of the State's challenge for cause, an appellant must show either that the trial court applied the wrong legal standard in sustaining the challenge or that the trial court abused its discretion in applying the correct legal standard. Ladd v. State, 3 S.W.3d 547, 562 (Tex.Cr.App. 1999), cert. denied, 529 U.S. 1070 (2000). A criminal defendant has the right to an impartial jury drawn from a venire that has not been tilted in favor of the state by selective prosecutorial challenges for cause, and such a process violates a defendant's rights under the United States Constitution, Sixth, and Fourteenth Amendments. Wainwright v. Witt, 469 U.S. 412, 521 (1968).

When reviewing a trial court's decision to grant or deny a challenge for cause, a reviewing court must look at the entire record to determine if there is sufficient evidence to support the court's ruling. Feldman v. State, 71 S.W.3d 738, 744 (Tex.Cr.App. 2002)(overruled on other grounds). The appellate courts give great deference to the trial court's decision because the trial judge is present to observe the demeanor of the

5

veniremember and to listen to his tone of voice. Id. Particular deference is given when the potential juror's answers are vacillating, unclear, or contradictory. Id.; King v. State, 29 S.W.3d 556, 568 (Tex.Cr.App. 2000).

In the instant case, the State asked for veniremember 12, Mr. Jason Samaniego-Krant to be called up. When asked why by the trial judge the prosecutor made this statement: "He's said he couldn't follow the law when it comes to the burden of proof. He said he had to be 100 percent certain." (R.R. Vol. 6, pg. 190). Up until this point Samaniego-Krant had made several statements to the attorney's during voir dire, but he had never used these words as relayed by the prosecutor. On this particular issue Samaniego-Krant had previously stated:

> I believe that we've been talking about incarceration, taking years of someone's life that I would have to be absolutely certain. The level of false convictions are incorrect, and with convictions these days I would feel horrible about sending someone to prison for something that was doubtful.

(R.R. Vol. 6, pg. 88-89). In response to questioning by the defense, the veniremember stated the following:

> It just kind of sounds to me like in talking about reasonable doubt, it almost sounds to me like you're trying to prove innocence instead of proving guilty. It just sounds backwards to me like you're trying to prove innocence – you're guilty until proven innocent. It just sounds like that to me.

(R.R. Vol. 6, pg. 136). These were the only comments on the burden of proof made by the veniremember prior to being brought to the bench for individual questioning.

At the bench the state inquired of the veniremember and the following exchange took place:

State:      Mr. Samaniego, I know when [the prosecutor] was questioning you about the burden of proof and reasonable doubt and beyond a reasonable doubt, you had made the comment that you would need to be 100 percent certain

Krant:      Yeah.

State:      And you understand that the law is beyond a reasonable doubt. There is actually – while there is no definition for beyond a reasonable doubt, there is case law that says it's not 100 percent certainty. Would you be able to follow the law and listen to a case and determine guilt or innocence based on beyond a reasonable doubt, or would you need 100 percent certainty?

Krant:      In my personal beliefs, spirituality and opinion I just feel that I'm taking into consideration someone else's livelihood, I would need to be pretty darn certain.

Court:      Okay. And when you say that, would you need to be 100 percent certain?

Krant:      Yes.

....

Defense:      When you say "100 percent certain," are you attributing that to beyond a reasonable doubt level or – I'm not sure what – because you say you have to be pretty confident.

Krant:      If I'm going to commit (sic) somebody to a crime, then I would want to be 100 percent certain that that crime was committed beyond a reasonable doubt.

Defense:      Okay. And is that what you require – are you – there is not percentage to beyond a reasonable doubt. Now, for some people it might be 100 percent.

Krant:      Right.

Defense:      The point is, are you going to hold the State to its burden, or are you going to require the State to a higher burden than what they're required?

Krant:      I would hold someone innocent until proven guilty, not the other way around, which to me is how it sounds with our discussion. It sounds like people are trying to prove innocence instead of guilt.

Defense:    Okay.

Krant:      So I'm – yes I mean –

Defense:    Are you going to require the State – to hold the State to a higher burden of proof than beyond a reasonable doubt?

Krant:      No.

....

Court:      What does the Defense have to say on Samaniego?

Defense:    We're going to object to that. He said he would hold the State to its burden and not more.

Court:      Okay. But he said 100 percent three times, so I'll grant the State's motion to strike for cause. I think he won't follow the law that they're entitled to follow.

(R.R. Vol. 6, pg. 192-195). The trial judge applied the wrong standard in this case, in that he based his decision to grant the state's challenge for cause on the number of times the veniremember stated 100% versus a determination of whether the veniremember understood the law and could not follow it. Further, the trial judge's recollection of the testimony presented was that the veniremember stated '100% certainty' three times, when in fact those were the prosecutor's words, and Samaniego-Krant adopted the words used by the State but did not initially phrase his response in that way. Nor as the questioning at the bench went on, did he use the 100% language to describe the State's burden of proof, but his belief in

8

the evidence presented. This is the quintessential 'higher threshold' juror, not 'higher burden'. In Texas, jurors must decide what "proof beyond a reasonable doubt" means to them. Murphy v. State, 112 S.W.3d 592, 597 (Tex.Cr.App. 2003). While it is no longer required that trial courts define "reasonable doubt" for the jury, it is also not prohibited. Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000) (overruling that portion of Geesa v. State, 820 S.W.2d 154, 162 (Tex.Cr.App. 1991), which required trial courts to include a particular instruction in the jury charge defining "beyond a reasonable doubt"). While expressing its opinion that the better practice is to give no definition of "reasonable doubt" to the jury, the Paulson Court acknowledged that, "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." Id. (quoting Victor v. Nebraska, 511 U.S. 1, 5 (1994)).

Thus, it is plain that prospective jurors may form their own definitions of proof beyond a reasonable doubt and they are not challengeable for cause based upon the type and amount of evidence they require to reach that level of confidence. Murphy, 112 S.W.3d at 598. There is nothing unlawful about differing thresholds of reasonable doubt among jurors. See Garrett v. State, 851 S.W.2d 853, 859 (Tex.Cr.App. 1993).

The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with law." Feldman, 71 S.W.3d at 744. Before a prospective juror can be excused for cause on this basis, however, the law must be explained to him and he must be asked whether he can follow that law

9

regardless of his personal views." Id. The proponent of the challenge has the burden of establishing that the challenge is proper. Id. at 747. "The proponent does not meet his burden until he has shown that the venireman understood the requirement of the law and could not overcome his prejudice well enough to follow it." Id. This veniremember stated that he would be able to take the oath and follow the law as given by the trial judge, and hold the State to their burden of proof and not more. Therefore, the trial judge should not have granted the State's challenge for cause.

In Gray v. Mississippi, 481 U.S. 648 (1987), the Supreme Court addressed the issue of a State challenge for cause which was erroneously granted. The State had lodged for-cause or peremptory challenges against every juror who "expressed any degree of uncertainty in the ability to cast ... a vote" for the death penalty, id., at 652, and quickly exhausted all of its peremptory challenges. Id., at 653. The prosecution then challenged a juror who had expressed no opposition to the death penalty and had said many times that she could return a death sentence. The trial court denied the challenge. Id., at 654-655. Arguing that the trial court had erroneously denied certain earlier challenges for cause, and thus had forced the State to waste peremptory challenges, the prosecution sought to reopen those previous challenges. The trial court refused to do so, but removed the current juror, over objection from the defense. Id., at 655. On appeal all of the state judges agreed the juror could not be excused for cause, but the appellate court held it was appropriate, under the circumstances, to treat the challenge in question as a peremptory strike. 481 U.S., at

10

656-657. The Supreme Court reversed, holding that the juror had been removed for cause and that she was not substantially impaired under the controlling standards. 481 U.S., at 659. The error was not subject to harmlessness review, and thus the sentence could not stand. Ibid, see also Uttecht v. Washington, 551 U.S. 1 (2007).

Appellant prays that this Court find that the granting of the State's challenge for cause did not meet the applicable standards, and find that the error is not subject to a harmless error analysis, as was held in Gray v. Mississippi, and reverse this case.

**THE TRIAL COURT ERRED IN ALLOWING THE STATE TO IMPEACH A WITNESS WITH APPELLANT'S PRIOR CONVICTION AND/OR BAD ACT**

During the direct examination of a state's witness, the state introduced Appellant alleged participation in an extraneous offense. The defense objected and the trial court overruled the objections allowing the jury to hear the unfettered testimony. (R.R. Vol. 7, pg. 40). The State introduced photos early in the guilt innocence phase of trial labeled 'car jacking.' Appellant was never charged with this crime, one alleged to have occurred after the robbery and the assaults were completed, but during his attempt to escape. The State later presented testimony from Richard Harris, owner of the vehicle. (R.R. Vol. 8, pg 139). Harris testified that a man ran up to him with a gun and told him to drive him out of the area. Harris drove for 15 minutes and the man got out, he did not take anything or otherwise threaten Harris. (R.R. Vol. 8, pg 158). Appellant was apprehended when APD officers ran the license plate of the first vehicle he was in and traced it to the Rosemont Apartments. (R.R. Vol. 8, pg 163). Officers went to the apartments and eventually saw a man matching the descriptions given to them by various people and apprehended him. (R.R. Vol. 8, pg 170).

An extraneous offense is "any act of misconduct, whether resulting in a prosecution or not, that is not shown in the charging papers."  Rankin v. State, 953 S.W.2d 707, 741 (Tex.Cr.App. 1996).  Generally, a defendant must be tried for the offense with which he is charged.  He may not be tried for a collateral crime or for being a criminal generally.  Tex.R.Crim.Evid. 404(b); Stafford v. State, 813 S.W.2d 503, 506 (Tex.Cr.App. 1991).  When the prosecution attempts to adduce evidence of "other crimes, wrongs, or acts," the defendant must object in a timely fashion to preserve his complaint for appeal.  Montgomery v. State, 810 S.W.2d 372, 387 (Tex.Cr.App. 1990) (on rehearing).  After objection, the prosecution must satisfy the trial court that the other crime, wrong, or act has relevance apart from its tendency to prove the defendant's character to show that he acted in conformity therewith.  Tex.R.Crim.Evid. 404(b).  If the trial court decides that the evidence has "no relevance apart from character conformity," then it is inadmissible.  Montgomery, 810 S.W.2d at 387.

The state may, however, persuade the trial court that an "other purpose" such as those set forth in Rule 404(b) will be served by admission of the extraneous-offense evidence. Id. at 387-88; Tex.R.Crim.Evid. 401, 404(b).  The relevance may be that the evidence "tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity[,] or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory...." Montgomery, 810 S.W.2d at 387-88.

If the trial court determines that the evidence is relevant, it must engage in the balancing test of Rule 403.  Id.

Evidence of a person's character is not admissible at the guilt/innocence phase of the trial to prove that he acted in conformity with his character. Tex.R.Evid. 404.  This is due to its inherent prejudice and tendency to confuse the issues.  If, however, the defendant creates what is purported to be a false impression about his nature as a law abiding citizen or his propensity for committing criminal acts, then he has opened the door for his opponent to present rebuttal evidence.  See, Delk v. State, 855 S.W.2d 700, 704 (Tex.Cr.App. 1993).  This rebuttal evidence can consist of a defendant's criminal history.  Id.

When an extraneous offense is admitted in the guilt phase of a trial, failing to give a limiting instruction at the time of admission may result in the jury drawing inferences about the defendant's guilt based upon character conformity, a use of the evidence  that was not contemplated by the trial court.  The danger then becomes that the improper inference drawn cannot later be erased by an instruction in the charge.  See, Jackson v. State, 992 S.W.2d 469 (Tex.Cr.App. 1999).  A ruling permitting use of a prior conviction to impeach will be reversed on appeal only upon a showing of a clear abuse of discretion.  See Theus v. State, 845 S.W.2d 874, 881 (Tex.Cr.App. 1992).

In the instant case, the State argued that this was unadjudicated extraneous evidence of a completely separate crime, that was nonetheless relevant under 404(b) due to the fact

14

that it was contextual evidence of flight, and therefore relevant and probative. (R.R. Vol. 8, pg 142). Appellant's 403 objection was overruled as well.

Evidence of another crime, wrong, or act also may be admissible as same-transaction contextual evidence where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, ..., of any one of them cannot be given without showing the others." Wyatt v. State, 23 S.W.3d 18, 25 (Tex.Cr.App. 2000) (quoting Rogers v. State, 853 S.W.2d 29, 33 (Tex.Cr.App. 1993)). The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. Id. But, under Rule 404(b), same-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence, and it is admissible "only to the extent that it is necessary to the jury's understanding of the offense." Id. (quoting Pondexter v. State, 942 S.W.2d 577, 584 (Tex.Cr.App. 1996)).

Here the evidence of the charged offense was presented in its entirety prior to the extraneous offense. The capture of Appellant at the Rosemont apartments was also entirely explained without the need of the extraneous. Therefore, the evidence of the car jacking had no independent relevance to any fact in evidence, and therefore was unnecessary to assist the jury to decide any question in controversy regarding the charged offenses. Pondexter, 942 S.W.2d at 584.

Because there was error the reviewing court should conduct a harmless error analysis. The extraneous offense was offered for an impermissible character reason and was more prejudicial than probative. As such this Court should find that the error was not harmless and remand for a new trial.

## Prayer

WHEREFORE, PREMISES CONSIDERED, MARK FRUGE, Appellant in the above styled and numbered cause respectfully prays that this Court grant him any and all relief to which he is entitled.

Respectfully submitted,

**ARIEL PAYAN**
Attorney at Law
1012 Rio Grande
Austin, Texas  78701
Tel.  512/478-3900
Fax: 512/472-4102
arielpayan@hotmail.com

by:  /s/ Ariel Payan
**Ariel Payan**
State Bar No. 00794430

Attorney for Appellant

## Statement Regarding Oral Argument

Oral Argument is Not Requested

## Certificate of Compliance

I hereby certify pursuant to T.R.A.P. 9.4(i)(3), the word count for this document, as determined by the word processing program is ___3598___ .

 /s/ Ariel Payan
**Ariel Payan**

# Certificate of Delivery

This is to certify that a true and correct copy of the above and foregoing "Appellant's Brief on Appeal" was delivered via email or hand-delivered, mailed postage pre-paid or transmitted via telecopier (*fax*) to the office of the District Attorney of Travis County, Texas; and to Appellant at the address listed in the Certificate of Parties, on August 7, 2015

Party Served      Travis County District Attorney
Scott Taliaferro
Scott.taliaferro@co.travis.tx.us

Appellant      Mark Fruge
TDCJ-ID No.1302065
Ellis Unit
1697 FM 980
Huntsville, TX 77343


 /s/ Ariel Payan
**Ariel Payan**