NOT DESIGNATED FOR PUBLICATION

No. 117,965

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CURTIS ANTHONY THAXTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed August 10, 2018. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Nicholas Campbell*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM: Curtis Anthony Thaxton appeals following his convictions of possession of methamphetamine and possession of drug paraphernalia. Thaxton claims: (1) the district court abused its discretion in denying defense counsel's requests to remove four prospective jurors for cause during jury selection; (2) the district court erred in instructing the jury in a manner that discouraged it from exercising its power of nullification; and (3) the district court violated Thaxton's constitutional rights when it increased his sentence based upon his prior criminal history, without requiring the State to prove the criminal history to a jury beyond a reasonable doubt. Thaxton's jury selection

1

claim does not require reversal because he has failed to show prejudice, and his other two claims are meritless. Thus, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On January 28, 2016, Brandy Blomgren reported to the police that someone had stolen her 1999 Ford Explorer from the driveway in front of her house. Blomgren saw her car drive down the street away from her house, but she did not see who was driving it. About two weeks later, on February 11, 2016, Kansas City Police Officer Michael Moulin was on patrol at night when he saw a Ford Explorer stopped on the side of the street with a man, later identified as Thaxton, passed out in the driver's seat. Moulin pulled up behind the Explorer and ran the vehicle's 60-day license tag. As the tag was registered to a Mazda, Moulin believed that the Ford Explorer was possibly stolen.

Moulin eventually arrested Thaxton for suspicion of driving under the influence. Moulin searched Thaxton and found a glass pipe and methamphetamine, confirmed by field tests. Another officer ran the Ford Explorer's vehicle identification number and discovered that the vehicle had been reported stolen.

On February 12, 2016, the State charged Thaxton with vehicle theft, possession of methamphetamine, and possession of drug paraphernalia. The district court held a two-day jury trial beginning on February 13, 2017. During jury selection, Thaxton's counsel requested the removal of four prospective jurors for cause because they expressed difficulty being fair in a drug case, but the district court denied each request. Thaxton ultimately struck three of the four prospective jurors with his peremptory challenges, but one of the challenged jurors remained on the jury.

Thaxton testified at trial as the only defense witness. He testified that he bought the Ford Explorer from Bradley Gattis without knowing that it was stolen. Thaxton

2

testified that he switched the tag so that he could drive the vehicle until it was properly registered, not because he was trying to conceal the fact that it was stolen. He also testified that he was not holding any drugs or a pipe. Thaxton argued to the jury that he never knew the vehicle was stolen, thus lacking the culpable mental state of theft, and that the officers planted the methamphetamine and the pipe.

The jury found Thaxton guilty of possession of methamphetamine and drug paraphernalia but failed to reach a verdict on theft. The State later dismissed the theft charge. On May 26, 2017, the district court sentenced Thaxton to a controlling term of 13 months' imprisonment and granted 18 months' probation. Thaxton timely appealed.

JURY SELECTION

Thaxton first claims the district court abused its discretion in denying defense counsel's requests to remove four prospective jurors for cause during jury selection. Each prospective juror stated that they would have difficulty being fair in a drug case because of personal or family experiences. Thaxton ultimately struck three of the four prospective jurors with his peremptory challenges, but one of the challenged jurors remained on the jury. Thaxton cites *Gray v. Mississippi*, 481 U.S. 648, 107 S. Ct. 2045, 95 L. Ed. 2d 622 (1987), a death penalty case, to support his claim that the district court's error must result in the reversal of his convictions.

The State contends that the district court did not abuse its discretion in denying the challenges for cause. Alternatively, the State argues that even if the district court abused its discretion in not striking the challenged jurors, Thaxton's convictions should not be reversed because he has not made the required showing of prejudice.

The purpose of jury selection is to enable the parties to select jurors who are competent to serve without bias, prejudice, or partiality. K.S.A. 22-3410(2)(i) states that a

3

juror may be challenged for cause if his or her "state of mind with reference to the case or any of the parties is such that the court determines there is doubt that he can act impartially and without prejudice to the substantial rights of any party." In addition to challenges for cause, each party in this case controlled six peremptory challenges, to be used at their discretion. See K.S.A. 2017 Supp. 22-3412(a)(2)(C). A peremptory challenge permits a party to strike a prospective juror, without cause, believed to be partial to the other side. *State v. Hill*, 290 Kan. 339, 359-60, 228 P.3d 1027 (2010).

Generally, the nature and scope of jury selection is left to the sound discretion of the district court. *State v. Woods*, 301 Kan. 852, 870, 348 P.3d 583 (2015). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Even if the district court abuses its discretion in denying a defendant's challenge of a prospective juror for cause, the failure to excuse a juror for cause does not constitute a ground for reversal unless the defendant can show that he or she was prejudiced by the district court's action. *State v. Heath*, 264 Kan. 557, 587, 957 P.2d 449 (1998).

Thaxton's counsel challenged four prospective jurors who stated they would have difficulty being fair in a drug case because of personal or family experiences. We will set forth the relevant testimony of each prospective juror. During the prosecutor's examination, prospective juror 33 spoke privately with the judge at the bench:

> "[Prospective juror 33]: My sister is a recovering drug addict and I have—I believe that this is going to be a very fair trial. But, sir, my sister stole from family, from others and I don't believe that it would be in the best interest for me to actually be involved in this because I would do my best to be as impartial as I could be and to try to hear everything there, but I believe that it would color my ability to be able to be an effective and impartial juror. What I would like to ask although is—and I'm more than

4

happy to serve on a jury, I have no issue with serving on juries, but it needs to not be a drug case. I'm not trying to be difficult.

. . . .

"[Prospective juror 33]:  I understand. Just me and drug cases would not be a good mix, but I am more than happy to serve.

"THE COURT:  I understand. Let me just make sure one thing.

"[Prospective juror 33]:  Yes, sir.

"THE COURT:  Obviously this has nothing to do with your sister.

"[Prospective juror 33]:  Right.

"THE COURT:  And again, I appreciate your honesty. But do you think you would be able to set aside—and this is difficult—set aside your personal beliefs and personal life and thoughts and be able to reach a decision based solely on the evidence that comes from the witness stand?

"[Prospective juror 33]:  I could do my best, sir, and I would be happy to do that if you requested that. I have not heard all the evidence.

"THE COURT:  Haven't heard any.

"[Prospective juror 33]:  And so I just don't want to get into a situation where I mean this is raw for me, sir.

"THE COURT:  Appreciate it. Appreciate your honesty.

"[Prospective juror 33]:  But I am more than happy—if you say, no, I want you to go further, I'm pretty sure you would be in 10 seconds later going he's off the list.

"THE COURT:  Well, we'll—

"[Prospective juror 33]:  But I'm willing to stay in, but thought you should know.

"THE COURT:  No, that's exactly—

"[Prospective juror 33]:  I appreciate it, sir. Thank you.

"THE COURT:  I'm going to have you stay though. You stay.

"[Prospective juror 33]:  I'll stay.

"THE COURT:  Correct."

Also during the prosecutor's examination, prospective juror 15 spoke privately with the judge at the bench:

5

"[Prospective juror 15]: Well, a few years back I had my car broken into and they stole my cell phone. I made a police report and police had asked me to meet them near the person's home because the person contacted me stating, well, I found your phone. And the police said that this person, that's what they did to try to get money from the person as kind of a reward situation. We went to the location, I knocked on the door, they knew she was in there, she wouldn't answer the door. Of course they wanted inside.

"THE COURT: Right.

"[Prospective juror 15]: And they never did do anything about it, they could never catch her.

"THE COURT: Okay.

"[Prospective juror 15]: So it's very frustrating.

"THE COURT: Understandably. Well, and obviously that's nothing to do with Mr. Thaxton here.

"[Prospective juror 15]: Correct.

"THE COURT: Do you think you'd be able to set aside what happened to you and your personal what you've lived with over those years and rely just on the evidence that comes from this witness stand and then I'm going to give you the law to apply to the evidence?

"[Prospective juror 15]: I would certainly try, but the fact that it was such an invasion of privacy and he stole her car, which is a horrible invasion of privacy, I would try, but I'm not sure I could listen."

During defense counsel's examination, in response to a general question about whether the panel members could be impartial in a drug trial, prospective juror 10 answered: "Relatives of my wife that are very badly into drugs and it's affecting the family greatly and has been for years and I would attempt to put that aside, but not gonna lie, it affects me greatly." Prospective juror 10 ultimately remained on the jury.

Finally, during defense counsel's examination, prospective juror 12 spoke privately with the judge at the bench:

6

"[Prospective juror 12]: My next door neighbor, his . . . former next door neighbor has been—had been involved with methamphetamines, the production of it, and got arrested and put in jail for the use of it. It just caused a lot of havoc in our neighborhood, had to deal with a lot of the police, times the police showing up and disrupting late at night, couldn't really be out front because we didn't know who was going to be showing up to do things, strange people in the neighborhood. So I'm just kind of really—preconceived notion of against it.

"THE COURT: That type of situation?

"[Prospective juror 12]: Yes.

"THE COURT: Well, obviously Mr. Thaxton was not involved with that. Do you think—and this is a difficult question that I ask—but do you think that you could set aside your personal belief and rely only on the evidence that comes from the witness stand here—

"[Prospective juror 12]: Uh-huh.

"THE COURT: —and the law that the court will provide to you to apply to those facts, do you think you'll be able to set aside any preconceived ideas?

"[Prospective juror 12]: It's really if you have—

"THE COURT: It is tough. I agree.

"[Prospective juror 12]: I think I could keep an open mind to it and everything.

"THE COURT: Okay. That's all we can ask for."

Based on their personal or family experiences, the four prospective jurors each expressed some doubt about whether they could be impartial in a drug case. Prospective juror 33 ultimately stated that he would do his best to be fair and was willing to stay on the jury. Likewise, prospective juror 12 ultimately stated that he could keep an open mind. Prospective juror 15 ultimately stated: "I would try [to be fair], but I'm not sure I could listen." Prospective juror 10, who remained on the jury, stated that he would try to put his family experiences aside but that it "affects me greatly."

Whether the district court abused its discretion in denying Thaxton's challenges for cause presents a close question, especially as to prospective jurors 10 and 15. In the end, we make no finding on whether the district court abused its discretion because Thaxton

has failed to show the prejudice required for this court to reverse his convictions. Thaxton ultimately struck three of the four prospective jurors with his peremptory challenges. To establish prejudice when the district court refuses to strike a prospective juror for cause, but the prospective juror is removed by a peremptory challenge, defendants must show that they would have used the wasted peremptory challenge to strike an objectionable juror that served on the jury. *Heath*, 264 Kan. at 588; *State v. Matei*, No. 110,003, 2015 WL 249680, at *3 (Kan. App. 2015) (unpublished opinion). Thaxton makes no attempt to establish this level of prejudice, as he points to no other person who served on the jury that he would have stricken given more peremptory challenges.

Prospective juror 10 remained on the jury, even though Thaxton could have removed this juror with a peremptory challenge. To establish prejudice when the district court refuses to strike a prospective juror for cause, and the prospective juror sits on the jury, defendants must demonstrate that using a peremptory strike on that particular juror would have forced them to accept other objectionable jurors. *State v. Mayberry*, 248 Kan. 369, 382, 807 P.2d 86 (1991); *Matei*, 2015 WL 249680, at *3. Again, Thaxton makes no attempt to show this level of prejudice. Thaxton could have removed prospective juror 10 with a peremptory challenge, and he fails to demonstrate that using a peremptory strike on prospective juror 10 would have forced him to accept another objectionable juror.

Thaxton cites *Gray v. Mississippi* to try to bypass the prejudice requirements established by Kansas caselaw. In that case, the United States Supreme Court reversed a death sentence because the district court erroneously excluded a qualified juror from the panel. In doing so, the Court determined that the traditional harmless error tests did not apply in a death penalty case and reversal was required due to the error. 481 U.S. at 667-68. *Gray* is distinguishable simply because it is a death penalty case. Here, we decline to reverse Thaxton's convictions based on the district court's potential errors in the jury selection process because Thaxton has failed to show the required prejudice.

8

Next, Thaxton claims the district court erred in instructing the jury in a manner that discouraged it from exercising its power of nullification. Thaxton objects to the district court's preliminary instruction: "It is my duty to instruct you in the law that applies to this case, and it is your duty to consider and follow all of the instructions. You must decide the case by applying these instructions to the facts as you find them." He also objects to the language in instruction number five: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).' [Citation omitted.]" *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

Thaxton failed to object to either instruction at trial. By failing to object, this court will not reverse Thaxton's convictions unless these instructions were clearly erroneous. *State v. Cameron*, 300 Kan. 384, 389, 329 P.3d 1158 (2014).

In Kansas, juries possess the power to decide a case in a manner which is contrary to the applicable facts and law, i.e., the power of jury nullification. But a defendant is not

entitled to have the jury instructed on the power of nullification. *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 (2011). Our Supreme Court has held that trial courts are prohibited from instructing jurors that if they have no reasonable doubt, they *must* or *will* find the defendant guilty. *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014).

But using the word *should* is a different story. This court has rejected Thaxton's argument about the reasonable doubt instruction in several opinions. See *State v. Allen*, 52 Kan. App. 2d 729, 735, 372 P.3d 432 (2016), *rev. denied* 306 Kan. 1320 (2017); *State v. Trotter*, No. 114,743, 2017 WL 3668908, at *3-5 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 993 (2018); *State v. Ulmer*, No. 114,315, 2016 WL 7428362, at *8-9 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1330 (2017); *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *1-2 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1322 (2017); *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1324 (2017); *State v. Singleton*, No. 112,997, 2016 WL 368083, at *4-6 (Kan. App. 2016) (unpublished opinion), *rev. denied* 305 Kan. 1257. We adopt the reasoning of these decisions and reject Thaxton's argument about instruction number five.

Likewise, the district court's preliminary instruction that the jury must follow the court's instructions is a correct statement of the law. See K.S.A. 22-3403(3). This preliminary instruction is found at PIK Crim. 4th 50.040 (2012 Supp.). Our Supreme Court strongly recommends that trial courts use PIK instructions. See *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015). The district court's preliminary instruction at Thaxton's trial was not erroneous.

SENTENCING ISSUE

Finally, Thaxton claims the district court violated his constitutional rights when it increased his sentence based upon his prior criminal history without requiring the State to

10

prove the criminal history to a jury beyond a reasonable doubt. Thaxton acknowledges that the Kansas Supreme Court has rejected this argument in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). The Court of Appeals is duty bound to follow Kansas Supreme Court precedent absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). There is no indication that our Supreme Court is departing from its holding in *Ivory*.

Affirmed.

11